UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MICHAEL ROBINSON,

       Plaintiff,

v.

HEIDI WASHINGTON et al.,

       Defendants.
_____/

Case No. 2:21-cv-63

Honorable Janet T. Neff

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).

    The Court reviewed Plaintiff's initial complaint and dismissed his claims against all parties other than Defendant Unknown Kytola. (ECF Nos. 5, 6.) The Court also dismissed all of Plaintiff's claims against Defendant Kytola other than Plaintiff's Eighth Amendment claim relating to an excessive use of force on July 8, 2020, and any state law claims relating to that excessive use of force. (*Id.*) The Court then referred the matter to mediation. (ECF No. 7.) The mediation did not resolve the dispute. (ECF No. 11.) The Court ordered service of the complaint on Defendant Kytola. Defendant Kytola executed a waiver of service on November 1, 2022. (ECF No. 16.)

    On November 4, 2022, the Court received an amended complaint. (ECF No. 14.) Under Federal Rule of Civil Procedure 15(a)(1), Plaintiff was within his right to file an amended

complaint. Plaintiff's amended complaint had the effect of superseding his initial complaint. *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes. . . ." (internal quotation marks omitted) (quoting *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013)).

By way of the amendment, Plaintiff sought to bring back in all of the dismissed Defendants and he added two new Defendants: Nurses Nicole Sunberg and Amy Rajala. Plaintiff is also within his right to add new defendants by way of his amendment. *See Broyles v. Corr. Med. Servs., Inc.*, No. 08–1638, 2009 WL 3154241, at *3 (6th Cir. 2009); *see also Peguese v. PNC Bank N.A.*, 306 F.R.D. 540, 544–46 (E.D. Mich. 2015); *Courser v. Allard*, No. 1:16-cv-1108, 2018 WL 2447970, at *1–3 (W.D. Mich. May 31, 2018).

When dismissing most of the parties named and claims raised in Plaintiff's initial complaint, the Court noted that the complaint was difficult to read and lacked clarity. But the claims and parties were not dismissed because of a lack of clarity; rather, they were dismissed because Plaintiff failed to state claims against any party other than Defendant Kytola. As set forth below, Plaintiff's amended complaint is easier to read; but it does not correct the fundamental defects noted in the Court's previous opinion.

Although Plaintiff is entitled to amend his complaint once as a matter of right, he is not entitled to avoid the limits imposed by the PLRA. Under the PLRA, the Court is required to dismiss Plaintiff's new presentation of his claims if those claims are frivolous, malicious, fail to state a claim upon which relief can be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).

The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Washington, Taskila, Hamel, Stromer, Wilson, Majurin, Rajala, and Sunberg for failure to state a claim. Plaintiff's claim that Defendant Kytola used excessive force in violation of Plaintiff's Eighth Amendment rights on July 8, 2020, remains in the case. Therefore, this case returns to the same course it was on when the Court initially ordered service on Defendant Kytola six months ago.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues MDOC Director Heidi Washington, AMF Warden Kris Taskila, AMF Grievance Coordinator T. Hamel, AMF prison guard David Kytola, AMF LPN Amber Majurin, AMF Prison Counselor Eric Stromer, and AMF Acting RUM Timothy Wilson. In his amended complaint, Plaintiff adds claims against AMF Registered Nurses Nicole Sunberg and Amy Rajala.

Plaintiff alleges that, on July 8, 2020, Defendant Kytola "slammed the key operated food slot metal bar on Plaintiff's left wrist." (Am. Compl., ECF No. 14, PageID.68.) Defendant Majurin, who was dispensing medications in the unit, witnessed the incident. She screamed and stated: "Oh my God. What are you doing? His hand. His hand. You['re] smashing his hand!" (*Id*.) Defendant Majurin asked Plaintiff to show her his hand. She stated that she was only an LPN and that she would have to notify an RN and that Plaintiff should submit a health care request. (*Id*.)

3

The next day, Plaintiff began a hunger strike. The strike lasted six days, until he finally passed out. Plaintiff complains that his vitals were not checked during the hunger strike.

Plaintiff reports that during the hunger strike he submitted health care requests regarding his wrist. Additionally, during that time, he notified every nurse that made a round in the unit that his left wrist was swollen and in pain. Plaintiff states that the nurses making rounds included Defendants Rajala and Sunberg.

Plaintiff states that on the fifth day of the hunger strike he notified "Defendants, 'Medical Staff'" that he had not consumed any food or nutrition. (*Id.*) There is no allegation in Plaintiff's amended complaint that supports the inference that Defendants Majurin, Rajala, or Sunberg were aware of Plaintiff's hunger strike before that date. Plaintiff claims that he also informed "Medical Staff" on that date that policy required them to check his vitals. However, Plaintiff does not say which of the individuals he specifically notified on the fifth day of the strike. Similarly, on the sixth day, he reports he collapsed unconscious in his cell. He reports that other prisoners told him that prison staff, including "Medical Staff," left him there to die. (*Id.*, PageID.69.) Plaintiff then states that he was rescued by Defendant Majurin who, while delivering morning medications, upon seeing Plaintiff, called for emergency assistance.

Plaintiff was transported to the healthcare building where he remained for two and one-half hours until he was transported to the local hospital emergency room. When Plaintiff returned from the hospital a few hours later, he was moved to an observation cell, which he describes as "unsanitized." (*Id.*) Plaintiff claims that his move to that cell was retaliatory. He does not state how long he was in the observation cell.

Plaintiff reports that on August 9, 2020, he filed a complaint, apparently against Defendant Hamel, for violation of due process. He reports that he was not interviewed and that Defendant

4

Majurin was never questioned—presumably about the events of July 8, 2020. He reports that Defendant Hamel destroyed video of the incident.

Plaintiff does not mention Defendant Washington in the body of the complaint except to say that she is responsible for what the other Defendants did because she "fail[ed] to act or intervene" after Plaintiff sent her letters and complaints. (*Id.*, PageID.66.)

Plaintiff also does not mention Defendant Taskila except to say that the warden is responsible for the Eighth Amendment violations of the other Defendants because nothing was done after the warden learned of the violations. (*See id.*)

Plaintiff raises the same sort of allegations against Defendants Hamel, Stromer, and Wilson. Plaintiff alleges that they, too, failed to act after learning of the wrongs committed by the other Defendants. (*See id.*, PageID.67.) Additionally, Plaintiff claims that Stromer and Wilson retaliated against Plaintiff for filing grievances against AMF staff. (*See id.*) Other than the cell assignment upon Plaintiff's return from the hospital, however, Plaintiff does not identify the retaliatory conduct. Similarly, Plaintiff fails to identify the grievances that prompted the retaliation.

The core violations for which all of the supervisory Defendants are purportedly liable, therefore, are Defendant Kytola's use of excessive force in violation of the Eighth Amendment and Defendant Majurin's, Rajala's, and Sunberg's deliberate indifference to Plaintiff's serious medical need.

Based on the allegations in Plaintiff's amended complaint, he has abandoned the state law claims he raised in his initial complaint.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

5

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Discussion

Plaintiff alleges that Defendant Kytola assaulted him. Plaintiff suggests that Defendants Washington, Taskila, Hamel, Stromer, and Wilson are responsible for that assault because they

learned of it after the fact and did not "act or intervene." (Am. Compl., ECF No. 14, PageID.66–67.) Plaintiff suggests further that Defendant Hamel is responsible because he did not properly address Plaintiff's grievance. Plaintiff indicates that Defendants Majurin, Rajala, and Sunberg were deliberately indifferent to Plaintiff's medical needs related to his wrist and his hunger strike.

### A.  Defendant Kytola (Eighth Amendment Excessive Force)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

7

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

At this stage of the proceedings, Plaintiff's allegations suffice to state a claim that Defendant Kytola used excessive force against Plaintiff.

8

**B.     Defendants Majurin, Rajala, and Sunberg (Eighth Amendment Deliberate Indifference)**

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the

9

prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (internal quotation marks omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

### 1. Hunger Strike

Plaintiff claims that the actions (or inaction) of Defendants Majurin, Rajala, and Sunberg violated MDOC policy regarding hunger strikes. MDOC Policy Directive 04.06.140 (eff. Jan. 7, 2008) sets out that policy.

Plaintiff complains because the defendants did not take his "vitals." The policy directive, however, does not specifically state that vitals must be taken. Indeed, the requirements of that policy depend on the warden and health care staff having notice that a prisoner has not consumed food for 72 hours or has not ingested liquids for 24 continuous hours. There is nothing to suggest that Defendants Majurin, Rajala, or Sunberg were aware of such facts before the fifth day of Plaintiff's hunger strike, nor are any facts alleged that, once they became aware, they failed to provide notice as required by the policy. After that notification, the policy calls for a medical evaluation to assess the prisoner's physical health condition. Additionally, the policy calls for a referral to a qualified mental health care provider to permit an evaluation of the striker's mental health.

There is nothing in the policy that suggests that registered nurses or licensed practical nurses doing medication rounds or other rounds in the unit are required to perform any specific tasks with regard to monitoring hunger-striking prisoners. Indeed, the policy specifically mentions that the prisoner must be seen by a physician, physician assistant, or nurse practitioner. Based on Plaintiff's allegations, neither Majurin, Rajala, or Sunberg fall into that category.

Plaintiff's allegations do not demonstrate that Defendants Majurin, Rajala, or Sunberg were deliberately indifferent to Plaintiff's serious medical needs arising from his hunger strike. Based

on Plaintiff's allegations, those Defendants became aware of Plaintiff's hunger strike in its final hours. Other than claiming they failed to take his vitals, Plaintiff does not identify a specific fault in their response. And there is nothing in the policy that states they are required to take vitals.

This Court addressed similar allegations in *Davis v. Corizon*, No. 1:21-cv-213, 2021 WL 3928668 (W.D. Mich. Sept. 2, 2021), *affirmed* No. 21-1692 (6th Cir. Aug. 11, 2022), concluding that Davis had failed to state a claim:

> Plaintiff primarily contends that Defendants Corizon, VanNortrick, Johnson, Bartlett, Dozeman, and Herman failed to follow policy and that failing to follow policy violated the Eighth Amendment. However, without more, imperfect compliance with MDOC policy, shows, at most, negligence by the Defendants, not deliberate indifference. *See Wilson v. Hofbauer*, 113 F. App'x 651, 653 (6th Cir. 2004) (concluding that prison officials' imperfect enforcement of MDOC's non-smoking policy, without more, demonstrated, at most, negligence) (citing *Hall v. Tyszkiewicz*, 28 F. App'x 493, 495–96 (6th Cir. 2002)).
>
> Moreover, Plaintiff's broad assertion that Defendants were "deliberately indifferent" does not support his conclusion; merely stating the "magic words" is not enough. *See Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (despite use of phrase "deliberate indifference" in his pleadings, inmate failed to show that defendants possessed the requisite mental state). Put simply, Plaintiff's conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.
>
> Rather, Plaintiff must support his claim with factual allegations, and the factual allegations in Plaintiff's complaint that pertain to the elements of deliberate indifference are scant. Stripped of allegations that Defendants imperfectly complied with policy, Plaintiff's relevant factual allegations merely assert that (1) Defendants VanNortrick, Johnson, Bartlett, Dozeman, and Herman were aware that Plaintiff had begun a hunger strike, and (2) he was eventually found unconscious on the floor of his cell. Yet, these allegations do not permit a fair inference that Plaintiff was at a substantial risk of serious harm, much less that any Defendant knowingly and recklessly disregarded that risk.

*Davis*, 2021 WL 3928668, at *4.

Plaintiff's scant allegations here warrant the same conclusion. There are no factual allegations that support his conclusory allegation that Defendants Majurin, Rajala, or Sunberg

12

were deliberately indifferent—that they knowingly and recklessly disregarded a substantial risk of serious harm to Plaintiff.[1] Accordingly, Plaintiff has failed to state this Eighth Amendment claim.

### 2. Wrist Injury

Plaintiff reports that his wrist was painful and swollen.[2] Based on Plaintiff's allegations regarding Nurse Majurin's response at the time of the injury, Plaintiff's allegations suffice to meet the objective test under *Farmer*. Nurse Majurin's response, however, completely undercuts any claim that she was deliberately indifferent to that injury. She informed Plaintiff that assessment of any injury was beyond her capability and she encouraged him to file a health care request. None of the facts alleged with regard to Nurse Majurin demonstrate that she was aware of a substantial risk of serious harm to Plaintiff and then knowingly and recklessly disregarded that risk.

Plaintiff's claims against Rajala and Sunberg fare no better; indeed, Plaintiff's allegations relating to those nurses are hopelessly vague and conclusory. At most, we know that Plaintiff told Defendants Rajala and Sunberg that his wrist was swollen and painful and that he had not been

---

[1] Plaintiff's claim is particularly puzzling with regard to Defendant Majurin because Plaintiff alleges that when she became aware of a risk of harm to Plaintiff, she immediately summoned emergency assistance.

[2] He also claims that his wrist was fractured, but this claim is belied by the documents attached to his amended complaint. (ECF No. 15, PageID.80.) The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3, n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage." (citations omitted)). Because of the documents Plaintiff has provided, the Court does not accept as true Plaintiff's allegation that his wrist was fractured.

called out for treatment. The complaint is silent as to when Plaintiff made such a statement and it is not apparent what Defendants Rajala or Sunberg did with that information. Plaintiff simply claims that he was not examined or treated in the days that followed the injury. Plaintiff does not identify any particular shortcoming on the part of Rajala or Sunberg. Moreover, Plaintiff notes, that he was seen in the health care building at AMF and in the hospital emergency room on July 16, 2020, which, based on the scant allegations in the complaint, could have been the day after Plaintiff told Defendants Rajala and Sunberg that his wrist hurt.

Defendants Rajala and Sunberg did not bear witness to the injury as it occurred. Thus, Plaintiff's allegations do not demonstrate that the injury met the objective test with regard to those Defendants. Even if a swollen, painful wrist was deemed sufficiently serious, Plaintiff's allegations do not support the inference that Rajala or Sunberg did (or did not do) some act that evidenced a knowing and deliberate disregard of a substantial risk of serious harm to Plaintiff. There are simply not enough facts alleged in the paragraph or two that relate to these Defendants. Accordingly, the Court concludes that Plaintiff has failed to state an Eighth Amendment claim against Defendants Rajala and Sunberg as well.

**C.  Defendants Washington, Taskila, Stromer, Wilson, and Hamel (Eighth Amendment)**

Plaintiff faults Defendants Washington, Taskila, Stromer, Wilson, and Hamel (the Supervisory Defendants) for the wrongs he suffered at the hands of others. Because Plaintiff has failed to state a claim against Defendants Majurin, Rajala, and Sunberg, the Supervisory Defendants cannot be liable for the non-existent constitutional wrongs of the nurses.

Plaintiff has stated a viable claim against Defendanat Kytola, but that does not make the Supervisory Defendants liable. Plaintiff asserts that they are liable because they learned of

14

Kytola's wrong after the fact but did not act. However, Plaintiff fails to allege that any of the Supervisory Defendants took any specific action against him with respect to Kytola's assault.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300) (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v.*

15

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that the Supervisory Defendants encouraged or condoned the conduct of Kytola, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts at all about the Eighth Amendment-violating conduct of the Supervisory Defendants, other than the conclusory allegation that they failed to act. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that the Supervisory Defendants were personally involved in the events surrounding Plaintiff's assault. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

      **D.**    **Defendants Stromer and Wilson (First Amendment Retaliation)**

When Plaintiff returned from the hospital emergency room, he was housed in an "unsanitized" observation cell. Plaintiff alleges that being housed in that cell was an act of retaliation by Defendants Stromer and Wilson.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

16

Plaintiff's retaliation claim fails. First, Plaintiff's complaint indicates that the "protected conduct" at issue was the filing of grievances against AMF staff. But Plaintiff does not identify any grievances that preceded his placement in the observation cell. Even his grievance against Defendant Kytola relating to the assault was not filed until July 12, 2020. (Grievance, ECF No. 1-1, PageID.21.) There are no facts alleged in the complaint regarding Defendants' knowledge of this grievance or suggesting that the grievance might have motivated the placement. There is a readily apparent relationship between the placement and Petitioner's hunger strike; but it is not clear that a self-imposed hunger strike is conduct protected by the First Amendment. *See, e.g.*, *Stefanoff v. Hays Cnty. Tex.*, 154 F.3d 523, 527 (5th Cir. 1998) (stating "a hunger strike ***may*** be protected by the First Amendment if it was intended to convey a particularized message" (emphasis added)). Moreover, placement in an observation cell after engaging in an act of self-harm is not the sort of action that should deter the protected conduct. The fact that the cell was not "sanitized" before Plaintiff's placement is likewise not the sort of adversity that would discourage the exercise of First Amendment rights. For all these reasons, the Court concludes that Plaintiff has failed to state a claim against Defendants Stromer and Wilson for First Amendment retaliation.

### E. Defendant Hamel

Plaintiff mentions the words "due process" in his allegations relating to Defendant Hamel. The crux of Plaintiff's complaint against Defendant Hamel appears to be that Hamel interfered with Plaintiff's grievance remedy and, therefore, denied Plaintiff due process. But Plaintiff has no due process right to file a prison grievance.

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002);

17

*Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Hamel's alleged conduct that frustrated Plaintiff's pursuit of the grievance process did not deprive Plaintiff of due process and Plaintiff has failed to state a claim for violation of his due process rights.

### Conclusion

Having conducted the review of Plaintiff's First Amended complaint as required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Washington, Taskila, Hamel, Stromer, Wilson, Majurin, Rajala, and Sunberg will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claim that Defendant Kytola used excessive force in violation of Plaintiff's Eighth Amendment rights on July 8, 2020, remains.

An order consistent with this opinion will be entered.


Dated:  April 28, 2023                              /s/ Janet T. Neff
                                                    Janet T. Neff
                                                    United States District Judge